**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TERRY KRISS and DIANE KRISS,    )
                                        )
           Plaintiffs,       )
                                          )
              v.             )         Civil Action No. 11-57
                                          )
FAYETTE COUNTY, *et al.*,      )         Judge David S. Cercone
                                        )         Magistrate Judge Cathy Bissoon
           Defendants.     )
                                          )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to Dismiss (Doc. 24) be granted, that Defendant Terry Shallenberger's Motion to Dismiss (Doc. 26) be granted, and that Defendant Fayette County Airport Authority's Motion to Dismiss (Doc. 28) be granted, as discussed below.

### II.     REPORT

## BACKGROUND

### A.  Factual Background

Plaintiffs Terry Kriss and Diane Kriss own a historic home known as the Isaac Meason House ("Meason House"), located in Fayette County, Pennsylvania. Compl. ¶¶ 5, 12-15 (Doc. 1). The Meason House is surrounded on all sides by property owned by various members of the Cellurale family. Id. at ¶ 16. This case involves Plaintiffs' long running feud with the Cellurales, the Cellurales' alleged connections with Fayette County officials, and Fayette County officials' alleged campaign to assist the Cellurales by taking zoning actions to diminish

Plaintiffs' property value, failing to investigate alleged zoning violations by the Cellurales, and evicting Plaintiff Terry Kriss from an airport hangar. See id. at ¶ 1.

Plaintiffs' forty-eight page complaint includes allegations dating back to 1995 related to Plaintiffs' various disputes with the Cellurales. A limited summary of Plaintiffs' allegations is provided below for background.

Zoning Disputes

Starting from sometime before 1995, Joseph Cellurale, Jr. operated or continues to operate an auto repair/body shop business near the Meason House. See id. at ¶ 19. This business allegedly was not in compliance with the Fayette County Zoning Ordinance. Id. at ¶ 20. As a result, on April 19, 1995, Joseph Cellurale, Jr. attempted to rezone five acres of his land. Id. Following Plaintiffs' opposition to the rezone, as well as Plaintiff Terry Kriss's successful appeal regarding a building permit obtained by Joseph Cellurale, Jr., Joseph Cellurale, Jr. withdrew his petition to rezone. Id. at ¶¶ 22-23, 26-27.

On August 22, 1995, Joseph Cellurale, Jr. obtained a non-conforming use permit. Id. at ¶ 28. Following Plaintiffs' series of appeals to the Fayette County Zoning Hearing Board and the Court of Common Pleas of Fayette County, the non-conforming use was reversed on May 17, 1996. Id. at ¶¶ 29-33, 36-39. On November 11, 1996, Fayette County Zoning Office issued a cease and desist order to Joseph Cellurale, Jr., but Joseph Cellurale, Jr. nonetheless continued to operate his business. Id. at ¶¶ 41-42.

On April 8, 1999, Joseph Cellurale, Jr. again attempted to rezone some of his property. Over Plaintiffs' objections, the Fayette County Commissioners approved a six-acre rezone on September 9, 1999. Id. at ¶ 71-72, 81. Following Plaintiffs' appeals, the Court of Common Pleas found the rezone illegal and issued a cease and desist order to Joseph Cellurale, Jr. Id. at

¶¶ 83-87.  Despite the cease and desist order and Plaintiffs' numerous requests for enforcement of the order, Joseph Cellurale, Jr. continues to operate his business.  Id. at ¶¶ 90-91.

On May 23, 2001, the Fayette County Zoning Hearing Board approved a "special exception" request by Joseph Cellurale, Jr.  Id. at ¶ 114.  The special exception imposed six conditions on Joseph Cellurale, Jr., including limiting his hours of business operations and requiring construction of a privacy fence with vegetative barrier to prevent the view of stored vehicles.  Id. at ¶ 118.  On November 11, 2007, the Zoning Hearing Board overturned an enforcement against Joseph Cellurale, Jr., despite his failure to strictly comply with the conditions of the special exception.  Id. at ¶¶ 161-70.  On October 8, 2009, Plaintiffs filed a civil suit against Joseph Cellurale, Jr. to enforce the conditions of the special exception.  Id. at ¶ 335.

In June 2010, Plaintiff Diane Kriss appeared at the Zoning Office and discovered that no building permit existed for a construction project on the property of James and Marilyn Cellurale.  Id. at ¶¶ 340-42.  Over the next several months, Plaintiffs made several inquiries and complaints to the Zoning Office regarding the construction project.  Id. at ¶¶ 343-58.  Defendant Sara Rosiek, the Director of Zoning, allegedly did not forward Plaintiffs' complaints to the appropriate Zoning Officers for investigation.  Id. at ¶ 358-61.  Plaintiffs have not yet received a "reasonable response" to their complaints and inquiries.  Id. at ¶ 362.

Defendant Rosiek allegedly instructed her employees not to investigate any of Plaintiffs' complaints.  Id. at ¶ 466.  Defendants Vincent Vicites and Vincent Zapotosky, Fayette County Commissioners, allegedly instructed Defendant Rosiek to engage in this behavior.  Id. at ¶¶ 468-69.  Such conduct by Defendants Rosiek, Vicites, and Zapotosky allegedly was undertaken in retaliation for Plaintiffs' filing of the October 8, 2009 lawsuit against Joseph Cellurale, Jr.  Id. at ¶ 470.

<u>Airport Lease</u>

Starting in 1999, Plaintiff Terry Kriss leased a storage facility at Joseph A. Hardy Connellsville Airport.  <u>Id.</u> at ¶ 212.  On September 9, 2008, Plaintiff Terry Kriss had a heated argument with Milissa Chomiak, a secretary for Defendant Fayette County Airport Authority ("Airport Authority").  <u>Id.</u> at ¶¶ 219, 228-30.  On September 26, 2008, at an Airport Authority hearing, Ms. Chomiak alleged that Plaintiff Terry Kriss threatened her.  <u>Id.</u> at ¶ 233.  Defendant Terry Shallenberger, Chairman of the Airport Authority Board, moved to evict Plaintiff Terry Kriss from the Airport.  <u>Id.</u> at ¶ 241.  The Board voted to evict Plaintiff Terry Kriss.  <u>Id.</u>

In April 2009, the Airport Authority terminated Ms. Chomiak.  <u>Id.</u> at ¶ 246.  At the May 19, 2009 Airport Authority meeting, Plaintiffs requested to be reinstated due to Ms. Chomiak's termination.  <u>Id.</u> at ¶ 247.  Plaintiffs offered to sign a five-year lease, but the Airport Authority Board declined to reinstate Plaintiffs.  <u>Id.</u> at ¶¶ 248-250.

## B. **Procedural Background**

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging violations of their rights under the First and Fourteenth Amendments to the U.S. Constitution.   In Count 1 of the Complaint, Plaintiffs allege that Defendants Fayette County, Vincent Vicites, Vincent Zapotosky, and Sara Rosiek (collectively, "the County Defendants") violated Plaintiffs' right to substantive due process by participating in a scheme to circumvent county zoning laws for the purpose of assisting the Cellurale family in an alleged campaign to diminish the value of the Meason House.  <u>Id.</u> at ¶¶ 446-461.

In Count 2, Plaintiffs allege two instances of retaliation against them for activity protected under the First Amendment.  First, Plaintiffs allege that when they filed their October 8, 2009 lawsuit against Joseph Cellurale, Jr., the County Defendants retaliated against Plaintiffs by "failing to investigate or legitimately acknowledge any zoning violations alleged by Plaintiffs

against the Cellurales." Id. at ¶¶ 463-475.  Second, Plaintiffs allege that after Plaintiffs alleged various zoning violations against the Cellurales between 1995 and 2008, Defendants Fayette County Airport Authority and Terry Shallenberger retaliated against Plaintiffs by supporting Plaintiff Terry Kriss's eviction from the Airport and publicly discussing private, unproven allegations of Ms. Chomiak.  Id. at ¶¶ 476-479.

All Defendants filed motions to dismiss all claims against them.  Docs. 24, 26, 28.  The County Defendants raise various arguments:  (1) Plaintiffs' substantive due process claim is barred by the statute of limitations; (2) Plaintiffs fail to allege any property interest protected by due process; (3) Plaintiffs do not allege any "conscience shocking" conduct sufficient to state a claim for violation of substantive due process rights; (4) Plaintiffs failed to allege any facts supporting causation for their First Amendment retaliation claim; (5) Plaintiffs cannot use a § 1983 action to compel Defendant Fayette County to enforce zoning ordinances; (6) the individual County Defendants are entitled to qualified immunity; (7) Plaintiffs failed to state a claim against Defendant Fayette County because Plaintiffs have not alleged any policy or custom resulting in the alleged constitutional violations; and (8) Plaintiffs are not entitled to punitive damages.

Defendant Airport Authority raises five arguments:  (1) Plaintiffs' First Amendment retaliation claim against Defendant Airport Authority is barred by the statute of limitations; (2) this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine; (3) Plaintiffs' claims are barred under the collateral attack doctrine; (4) Plaintiffs failed to state a claim under § 1983 because they do not allege any action under color of state law; and (5) Plaintiffs failed to state a claim against Defendant Airport Authority because Plaintiffs have not alleged any policy or custom resulting in the alleged constitutional violation.

Finally, Defendant Shallenberger raises five arguments: (1) Plaintiffs' First Amendment retaliation claim against Defendant Shallenberger is barred by the statute of limitations; (2) Plaintiffs failed to state a First Amendment retaliation claim because the alleged protected activity occurred after the alleged retaliation; (3) Plaintiffs failed to state a First Amendment retaliation claim because Plaintiffs do not allege that Defendant Shallenberger knew that Ms. Chomiak's allegations against Plaintiff Terry Kriss were false; (4) Plaintiffs failed to state a claim against Defendant Shallenberger because Defendant Shallenberger's single vote on the Airport Authority Board could not have resulted in Plaintiff Terry Kriss's eviction from the Airport; and (5) Defendant Shallenberger is entitled to qualified immunity.

## ANALYSIS

### A. Subject Matter Jurisdiction

As an initial matter, this Court must determine if it has subject matter jurisdiction over Plaintiffs' claims. Defendant Airport Authority asserts that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. Airport Authority Br. at 11-15 (Doc. 29). The County Defendants purport to incorporate by reference Defendant Airport Authority's jurisdiction arguments. County Br. at 22 (Doc. 25).

"Under the Rooker-Feldman doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006) (citing Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir.1998)). The Rooker-Feldman doctrine, therefore, precludes federal court jurisdiction over claims that were actually litigated in state court or claims that are "inextricably intertwined" with adjudication by a state court. Id. (citing Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000)).

Defendant Airport Authority argues that adjudication of Plaintiffs' claims would require re-litigation of various zoning-related rulings of the County Zoning Hearing Board, the Fayette County Court of Common Pleas, and the Pennsylvania Commonwealth Court.  Airport Authority Br. at 15 (Doc. 29).  But Plaintiffs' First Amendment claim against Defendant Airport Authority (the only claim against the Airport Authority) does not challenge the various zoning-related decisions alleged in the Complaint.  Plaintiffs allege that Defendant Airport Authority (and Defendant Shallenberger) retaliated against Plaintiffs after Plaintiffs pursued various zoning-related actions against the Cellurales.  Whether the various zoning-related actions were correctly decided is irrelevant to whether Defendant Airport Authority retaliated against Plaintiffs for filing such actions.  The <u>Rooker-Feldman</u> doctrine, therefore, does not preclude this Court's subject matter jurisdiction over Plaintiffs' First Amendment claim against Defendant Airport Authority (or Defendant Shallenberger).

For similar reasons, the <u>Rooker-Feldman</u> doctrine does not preclude subject matter jurisdiction over Plaintiffs' First Amendment retaliation claim against the County Defendants. Plaintiffs' First Amendment claim against the County Defendants is premised upon the County Defendants' alleged retaliation against Plaintiffs for Plaintiffs' filing of the October 8, 2009 lawsuit against Joseph Cellurale, Jr.  The outcome of that lawsuit is immaterial to the adjudication of Plaintiffs' First Amendment retaliation claim against the County Defendants.

Finally, the <u>Rooker-Feldman</u> doctrine does not preclude subject matter jurisdiction over Plaintiffs' substantive due process claim.  Federal relief on a substantive due process claim alleging that zoning decisions diminished property values does not necessarily require a finding that state court judgments on the zoning decisions were erroneous.  <u>Taliaferro</u>, 458 F.3d at 193.

In other words, a decision in favor of Plaintiffs on their due process claim would not mean that the County Zoning Board abused its discretion in making its zoning decisions. See id.

Defendants also assert that Plaintiffs' claims are barred by the collateral attack doctrine, but the collateral attack doctrine does not apply for the same reasons that the Rooker-Feldman doctrine does not apply.

### B. Whether Defendants Fayette County and Airport Authority May Be Liable

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). This is because a municipality cannot be vicariously liable under 42 U.S.C. § 1983 for their employees' actions. Connick v. Thompson, __ U.S. __, 131 S.Ct. 1350, 1359 (2011). Instead, a municipality may be liable only for injuries caused by "action pursuant to official municipal policy." Id. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. Thus, the Court must determine whether Plaintiffs have alleged sufficient facts to support a finding that the alleged unconstitutional conduct constituted action pursuant to a policy or custom of Defendants Fayette County and Airport Authority.

#### 1. Fayette County

Defendant Fayette County makes a cursory argument that the County's alleged failure to enforce zoning ordinances against the Cellurales is not a policy. County Br. at 19-20. Defendant Fayette County, however, does not address Plaintiffs' allegations that the alleged unconstitutional conduct comprised acts of policymaking officials and was so pervasive as to constitute a Fayette County custom. See Compl. at ¶¶ 452, 455-56, 465-69, 472-74. Thus,

Defendant Fayette County's motion to dismiss on the basis of no official policy or custom should be denied.

### 2. Airport Authority

Defendant Airport Authority asserts that Plaintiffs failed to allege any action under color of state law, as required for a § 1983 action, and failed to allege any municipal policy or custom, as required to render Defendant Airport Authority liable under § 1983. Defendant Airport Authority's assertions warrant little attention, as the Airport Authority Board's action in rejecting Plaintiffs' 2009 lease proposal was an action taken under color of state law that represents the policy of Defendant Airport Authority.[1] See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.").

### C. **Substantive Due Process Claim Against County Defendants**

### 1. Statute of Limitations

Pennsylvania's two-year statute of limitations for personal injury actions applies to Plaintiffs' claims under § 1983. See Lake v. Arnold, 232 F.3d 360, 368-69 (3d Cir. 2000). Plaintiffs filed their complaint on January 18, 2011. Thus, any claims arising from Defendants' conduct prior to January 18, 2009 appears to be time-barred. Plaintiffs nonetheless argue that their substantive due process claim based on such conduct is timely based on the continuing violations doctrine.

---

[1] The Court need not determine if the other alleged acts of Defendant Airport Authority were done pursuant to municipal policy or custom, because Plaintiffs concede that their other claims against Defendant Airport Authority are barred by the statute of limitations. See infra Part E.1.

The continuing violations doctrine is an "equitable exception to the timely filing requirement." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995)). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Id. (quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).

The continuing violations doctrine does not apply to "the occurrence of isolated or sporadic acts." Id. (quoting West, 45 F.3d at 755). Regarding this inquiry, courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. Id. (citing West, 45 F.3d at 755 n.9). The consideration of "degree of permanence" is the most important of the factors. Id. (citing Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).

In their complaint, Plaintiffs allege that the County Defendants violated Plaintiffs' substantive due process rights by intentionally diminishing the value of the Meason House by participating "in an ongoing scheme to circumvent all Fayette County laws and accepted procedures for the benefit of the Cellurale family and for the intended detriment of the Krisses." Compl. at ¶¶ 447-48 (Doc. 1). Plaintiffs allege that "[t]he rendering of official decisions and the utilization of behind the scenes coercion for the express purpose of depriving the Krisses of their

constitutional right to their property is shocking to the conscience." Id. at ¶ 453. Plaintiffs seek

"[c]ompensatory damages for the lost value of the Meason House, for attorney fees forced to be

expended appealing the unlawful decisions regarding the Cellurales and retaliatory zoning

offenses leveled against the Krisses, and for emotional pain and suffering." Id. at ¶ 461. The

loss in value of the Meason House allegedly is attributable to "[t]he encroachment of the

Cellurales' illegal activity" that "has destroyed the view shed from the Meason House." Id. at

¶ 438. From Plaintiffs' complaint, the substantive due process claim therefore appears to be

based on Defendants' alleged conduct in making decisions regarding various zoning issues.[2]

Under Cowell, the continuing violations doctrine does not apply to Plaintiffs' substantive

due process claim. A continuing violation requires that the "last act evidencing the continuing

practice falls within the limitations period." Cowell, 263 F.3d at 292. In Plaintiffs' complaint,

the only alleged conduct within the two-year limitations period (i.e., after January 18, 2009) that

potentially is related to Plaintiffs' substantive due process claim is the County Defendants'

alleged failure to investigate Plaintiffs' complaints about zoning violations on James and Marilyn

Cellurale's property. See Compl. at ¶¶ 340-362. Even assuming arguendo that failure to

investigate alleged zoning violations could constitute a substantive due process violation, such

conduct does not evidence a continuing violation when the three continuing violation factors are

applied in this case.

---

[2]     In Plaintiffs' brief in response to the County Defendants' motion to dismiss, Plaintiffs assert
that they "have not alleged that their substantive due process rights have been violated by
virtue of the adverse decisions and inactions outlined in their Complaint." Pls.' Response to
County Defs. at 4 (Doc. 34). Plaintiffs refer to an "ongoing campaign to deprive the Krisses
of their property." Id. But if this "ongoing campaign" does not consist of Defendants'
"adverse decisions and inactions," it is unclear what affirmative acts support Plaintiffs'
continuing violation theory. See Cowell, 263 F.3d at 293 ("The focus of the continuing
violations doctrine is on affirmative acts of the defendants.").

First, the alleged conduct does not relate to the same "subject matter." Plaintiffs allege a variety of zoning-related actions by the County Defendants, but those zoning actions relate to distinct issues. For example, the alleged failure to investigate alleged zoning violations on James and Marilyn Cellurale's property has nothing to do with actions related to Plaintiffs' property or actions related to Joseph Cellurale, Jr.'s property.

The Third Circuit in Cowell rejected a similar substantive due process continuing violation theory based on an alleged "campaign of harassment" amounting to a "general interference with property rights." Cowell, 263 F.3d at 294. In Cowell, the plaintiffs alleged that the township imposed two liens on the plaintiffs' property to retaliate against them for challenging township zoning changes and to cause financial harm to the plaintiffs. See id. at 288. Because the liens were imposed outside the two-year limitations period, the plaintiffs asserted a continuing violation theory based on an alleged "campaign of harassment" involving the township's imposition of additional costs and conditions on the plaintiffs' property that reduced the sales prices of the plaintiffs' lots. Id. at 294. In applying the "subject matter" factor of the continuing violation test, the court found that the imposition of additional costs and conditions on the plaintiffs' property was unrelated to the imposition of liens. Although the alleged acts all generally related to the plaintiffs' property rights, "substantive due process jurisprudence has always focused on the particular acts of the defendant, and not on a general interference with property rights." Id. (citing Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 125 (3d Cir. 2000); Blanche Road Co. v. Bensalem Twp., 57 F.3d 253, 268 (3d Cir. 1995)). Similarly here, the various alleged actions by the County Defendants generally relate to property rights but do not relate to the same "subject matter." Thus, the "subject matter" factor of the continuing violation test favors a finding of no continuing violation.

Second, because the various alleged actions by the County Defendants are unrelated, the "frequency" factor of the continuing violation test also favors a finding of no continuing violation. See id. at 295 (holding that the type of acts that would satisfy the "frequency" factor "must at least be acts of substantially similar nature to those which were the basis of the original claim").

Third, the "degree of permanence" factor also favors a finding of no continuing violation. The "degree of permanence" factor focuses on the policy rationale of the statute of limitations – "the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Id. at 295. In the present case, Plaintiffs were aware of the alleged wrongfulness of the County Defendants' actions when those actions were taken. For example, at the time the County Defendants took action related to Joseph Cellurale, Jr.'s property, Plaintiffs were aware of any alleged harm to their property. Plaintiffs' filing of their October 8, 2009 lawsuit against Joseph Cellurale, Jr. to enforce conditions of the special exception granted to Joseph Cellurale, Jr. evidences Plaintiffs' awareness of alleged harm to their property caused by zoning actions related to Joseph Cellurale, Jr.'s property. To allow Plaintiffs "to proceed with their substantive due process claim now would be unfair" to the County Defendants "and contrary to the policy rationale of the statute of limitations." Id. at 295.

Thus, all three continuing violation factors favor a finding of no continuing violation. The alleged failure of the County Defendants to investigate alleged zoning violations by James and Marilyn Cellurale in 2010 does not relieve Plaintiffs from the statute of limitations on substantive due process claims related to the County Defendants' actions regarding different property and different zoning issues dating back to 1995. See id. To the extent Plaintiffs assert a

substantive due process claim based upon any conduct prior to January 18, 2009, such a claim is barred by the statute of limitations.

      2.   <u>Plaintiffs Do Not Allege Harm To A Property Interest Protected By Due Process</u>

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008) (citing <u>United Artists Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392, 400-02 (3d Cir.2003)). Because ownership of real property is protected by substantive due process, a plaintiff alleges a property interest worthy of substantive due process protection "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property." <u>DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell</u>, 53 F.3d 592, 600-01 (3d Cir.1995), <u>overruled on other grounds by United Artists</u>, 316 F.3d at 400-01.

Even if the statute of limitations did not preclude a substantive due process claim based on conduct prior to January 18, 2009, Plaintiffs' substantive due process claim should be dismissed because Plaintiffs have failed to allege harm to a property interest entitled to substantive due process protection.[3] Plaintiffs argue that the County Defendants have interfered with Plaintiffs' "use and enjoyment" of their property "by significantly diminishing its economic value and creating an atmosphere of oppression" through an "overarching scheme to drive the Krisses from their property." Pls.' Response to County Defs. at 7 (Doc. 34). But none of the County Defendants' actions "impinges upon" Plaintiffs' "use and enjoyment" of Plaintiffs'

---

[3]   As explained above, the only alleged conduct after January 18, 2009, potentially relevant to Plaintiffs' substantive due process claim, is the alleged failure of the County Defendants to investigate alleged zoning violations on James and Marilyn Cellurale's property. Notably, the complaint is devoid of any allegations that the failure to investigate the alleged zoning violations has limited Plaintiffs' use and enjoyment of their property.

property. DeBlasio, 53 F.3d at 601. Some of the alleged zoning actions related to the Cellurales' property allegedly have allowed the Cellurales to "destroy[] the view shed from the Meason House," but such actions do not limit Plaintiffs' use and enjoyment of the Meason House. Other alleged zoning actions related to the Cellurales' property were resolved in Plaintiffs' favor and, therefore, could not have limited Plaintiffs' use and enjoyment of their property. See Siegmond v. Fedor, No. 01-2266, 2004 WL 1490430, at *4 (June 29, 2004) (finding that issuance of zoning enforcement notices did not interfere with use and enjoyment of property where plaintiffs were not required to take action on their properties and plaintiffs successfully appealed zoning enforcements). The alleged zoning enforcement actions against Plaintiffs all were withdrawn, so those actions also could not have limited Plaintiffs' use and enjoyment of the Meason House. See id. Finally, the alleged "undue influence in the wholly inappropriate Airport eviction," Pls.' Response to County Defs. at 7 (Doc. 34), is completely unrelated to Plaintiffs' use and enjoyment of the Meason House.

Plaintiffs also argue that property value is a property interest protected by substantive due process. The Court of Appeals for the Third Circuit does not appear to have addressed whether property value, by itself, is protected by substantive due process. The undersigned agrees with other district courts in the Third Circuit and the Court of Appeals for the Second Circuit, which have found that a decline in property value, by itself, cannot support a substantive due process claim. See BAM Historic Dist. Ass'n v. Koch, 723 F.2d 233, 237 (2d Cir. 1983); Tri-County Concerned Citizens Ass'n v. Carr, No. 98-4184, 2001 WL 1132227, at *4 (E.D. Pa. Sept. 18, 2001), aff'd, 47 F. App'x 149 (3d Cir. 2002); MacNamara v. County Council of Sussex Cnty., 738 F. Supp. 134, 142 (D. Del. 1990), aff'd, 922 F.2d 832 (3d Cir. 1990); Stop-Save Twp. Open Places, Inc. v. Bd. of Supervisors of Montgomery Twp., No. 96-7325, 1996 WL 663875, at *4

(E.D. Pa. Nov. 15, 1996) ("One does not have a protected property interest in the use of neighboring property because that use may adversely affect the value of his property." (citing Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990)); see also Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection, __ U.S. __, 130 S.Ct. 2592, 2605-06 (2010) (Scalia, J.) (plurality opinion) (suggesting that Due Process Clause does not impose "limits on government's ability to diminish property values by regulation")). Plaintiffs' attempt to distinguish those cases is unpersuasive.

Because Plaintiffs fail to allege harm to a property interest protected by substantive due process, Plaintiffs' substantive due process claim should be dismissed.[4]

### 3. Plaintiffs Do Not Allege Behavior That "Shocks the Conscience"

Even if Plaintiffs have alleged a property interest protected by substantive due process, Plaintiffs have not alleged behavior that "shocks the conscience," as required for a substantive due process violation. Chainey, 523 F.3d at 219. In the context of zoning actions, the "shocks the conscience" test "is designed to avoid converting federal courts into super zoning tribunals." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004). Thus, "[w]hat shocks the conscience is only the most egregious official conduct." Id. (quotation marks omitted).

Conscience-shocking behavior in the context of zoning actions requires allegations of corruption, self-dealing, or bias against an ethnic group. See Eichenlaub, 385 F.3d at 286; Chainey 523 F.3d at 220 (discussing Eichenlaub). Improper motive alone is insufficient to meet the "shocks the conscience" test. Chainey, 523 F.3d at 220. Further, "the politics and animosities that often animate local decision-making are not matters of constitutional concern."

---

[4] In Taliaferro, the Third Circuit held that alleged injuries to the plaintiffs' property values and neighborhood arising from approval of a zoning variance were sufficiently concrete and particularized injuries to confer standing on the plaintiffs to bring a substantive due process claim against a township zoning board. 458 F.3d at 190-91. The court, however, did not address the merits of the substantive due process claim.

Maple Props., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 180 (3d Cir. 2005) (citing Eichenlaub, 385 F.3d at 285-86).

Thus, conduct of officials that may be "unfair" or "improper" from a property owner's perspective does not necessarily constitute a substantive due process violation. Id. at 180. For example, zoning actions taken "in the dark" without a "deliberative process," even if "targeted selectively" at a property owner, do not "shock the conscience." Id. at 179-80. Failure to follow a township attorney's advice, or making decisions based on concerns over impacts on neighbors, road conditions and reduced property values, even if not valid criteria for a zoning decision, does not shock the conscience. Dotzel v. Ashbridge, 306 F. App'x 798, 801 (3d Cir. 2009). Even a scheme to improperly apply ordinances, treat a property owner differently from nearby owners, actively inhibit a property owner's opportunity to develop its land, and intentionally disregard duties under Pennsylvania state law does not amount to behavior that shocks the conscience. Highway Materials, Inc. v. Whitemarsh Twp., 386 F. App'x 251, 258 (3d Cir. 2010).

In light of these standards and examples, Plaintiffs have not alleged behavior that shocks the conscience. Plaintiffs assert that they have alleged "corruption and self-dealing" through allegations of "a tangled web of family connections, friendships, political contributions, and outright disdain toward the Krisses." Pls.' Response to County Defs. at 12 (Doc. 34). Plaintiffs' characterizations aside, the alleged "corruption and self-dealing" amount to nothing more than "the politics and animosities that often animate local decision-making." Maple Props., 151 F. App'x at 180. The alleged actions of the County Defendants do not shock the conscience, even if those actions were "targeted selectively" at Plaintiffs and in favor of the Cellurales, contradicted advice of the County's attorney, involved unlawful closed door meetings, or intentionally disregarded County ordinances. See Pls.' Response to County Defs. at 12 (Doc.

34); Maple Props., 151 F. App'x at 180; Dotzel, 306 F. App'x at 801; Highway Materials, 386 F. App'x at 258. Further, accepting as true Plaintiffs' allegation that the County Defendants' motive was to assist the Cellurales in a scheme to "eject" Plaintiffs from their property, such a motive is not sufficiently egregious as to shock the conscience. See Locust Valley Golf Club, Inc. v. Upper Saucon Twp., 391 F. App'x 195, 199 (3d Cir. 2010) (finding that township official's alleged "self-dealing" in taking zoning actions out of hope to purchase the plaintiff's property in the future was "not so egregious as to shock the conscience"). While the alleged conduct of the County Defendants might be "unfair" or "improper," such conduct does not rise to the level of a substantive due process violation. Maple Props., 151 F. App'x at 180.

Thus, Plaintiffs' substantive due process claim should be dismissed on the additional ground that Plaintiffs have failed to allege behavior that shocks the conscience.

### D. First Amendment Retaliation Claim Against County Defendants

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned

from the record as a whole' the trier of the fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

Plaintiffs' First Amendment retaliation claim is based upon the County Defendants' failure to investigate alleged zoning violations by James and Marilyn Cellurale beginning in June 2010. See Compl. at ¶¶ 340-62. Plaintiffs allege that the County Defendants intentionally failed to investigate such alleged zoning violations in retaliation against Plaintiffs for filing the lawsuit against Joseph Cellurale, Jr. on October 8, 2009. See id. at ¶¶ 463-75.

Defendants argue that Plaintiffs have not alleged any facts to support a causal link between the protected activity of filing the lawsuit against Joseph Cellurale, Jr. and the alleged retaliatory action of failing to investigate alleged zoning violations by James and Marilyn Cellurale. County Defs.' Br. at 15-17 (Doc. 25). In response, Plaintiffs argue that they have alleged a fifteen-year pattern of antagonism against Plaintiffs that sufficiently establishes a causal link. Pls.' Response to County Defs. at 13-15 (Doc. 34).

Plaintiffs' theory of causation fails because a "pattern of antagonism" to support causation refers to intervening antagonism between the time of the protected activity and the time of the alleged retaliatory conduct. See Marra v. Philadelphia Housing Auth., 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee . . . ."). The pattern of antagonism alleged by Plaintiffs refers to conduct prior to Plaintiffs filing of the lawsuit against Joseph Cellurale, Jr. on October 8, 2009. Such a pattern of antagonism might demonstrate that the County Defendants acted out of general animosity towards Plaintiffs, but cannot establish a causal link between the filing of the lawsuit and the

alleged retaliatory conduct.  Thus, Plaintiffs' First Amendment retaliation claim against the County Defendants should be dismissed for failure to state a claim.

### E.  First Amendment Retaliation Claim Against Defendants Airport Authority and Shallenberger

#### 1.  Statute of Limitations

Defendants Airport Authority and Shallenberger assert that Plaintiffs are attempting to assert a "disguised" continuing violations theory to "revive" their time-barred action based on Plaintiff Terry Kriss's 2008 eviction from the Airport.  See Airport Auth. Reply at 1-3 (Doc. 41); Shallenberger Reply at 1-3 (Doc. 42).  Contrary to Defendants Airport Authority and Shallenberger's assertions, Plaintiffs concede that any First Amendment retaliation claim based on the 2008 eviction is barred by the two-year statute of limitations and instead assert that the May 19, 2009 rejection of a new lease proposal is an independently actionable event.[5]  Pls.' Response to Airport Authority at 3 (Doc. 33); Pls.' Response to Shallenberger at 3 (Doc. 35). Even if Plaintiffs were asserting a continuing violation, a finding of no continuing violation would simply mean any action based on conduct prior to the two-year limitations period would be time-barred.  It would not mean actions based on future conduct also are time-barred.  See Cowell, 263 F.3d at 292 (explaining that continuing violations doctrine allows recovery for past conduct that would otherwise be time-barred).

Thus, Plaintiffs' First Amendment retaliation claims against Defendants Airport Authority and Shallenberger should be dismissed as barred by the statute of limitations, only to the extent the claims are based upon alleged retaliatory conduct prior to January 18, 2009.

---

[5]  Likewise, Plaintiffs concede that any claim based on Defendant Shallenberger's alleged retaliation by "publically discussing . . . private, unproven allegations" during the 2008 eviction hearing is time barred.  Pls.' Response to Shallenberger at 7 (Doc. 35).

2. <u>Plaintiffs Have Not Pled Sufficient Facts To Make a Plausible First Amendment Retaliation Claim</u>

Defendant Shallenberger argues that Plaintiffs have failed to state a claim because (1) the alleged protected activity occurred after the alleged retaliatory conduct; (2) Plaintiffs have not alleged that Defendant Shallenberger knew or should have known Ms. Chomiak's allegations against Plaintiff Terry Kriss were false; and (3) Defendant Shallenberger's single vote on the Airport Authority Board did not result in eviction. The undersigned agrees that Plaintiffs have failed to state a claim, but not for the reasons asserted by Defendant Shallenberger.

With respect to Defendant Shallenberger's first argument regarding the timing of the alleged protected activity and the alleged retaliatory conduct, Defendant Shallenberger apparently misunderstands Plaintiffs' First Amendment retaliation claim against him. Plaintiffs' theory is that they engaged in the protected activity of filing various zoning actions against the Cellurales from 1995 through 2008, and that Defendant Shallenberger retaliated against them in 2008 by moving to evict Plaintiff Terry Kriss from the Airport and publicly discussing an allegedly private matter. <u>See</u> Compl. at ¶¶ 415-420. Contrary to Defendant Shallenberger's assertions, the alleged protected activity occurred before the alleged retaliatory action.

With respect to Defendant Shallenberger's second argument, Defendant Shallenberger asserts that "absent allegations that he acted on information knowing the same to be falsified, it is impossible to discern from the Complaint that his actions in bringing the leasehold to its end failed to conform to any constitutional obligation he owed to the lessees." Shallenberger Br. at 10 (Doc. 27). At the pleading stage, Plaintiffs need only plead "a causal link between the constitutionally protected conduct and the retaliatory action." <u>Thomas</u>, 463 F.3d at 296. Plaintiffs' tenuous causation theory will be even more tenuous if Defendant Shallenberger did

not know that Ms. Chomiak's allegations were false, but Plaintiffs need not disprove alternative explanations for Defendant Shallenberger's conduct at the pleading stage.[6]

With respect to Defendant Shallenberger's third argument that Defendant Shallenberger's single vote could not have resulted in eviction, Plaintiffs argue that the alleged retaliatory motive of Defendant Shallenberger creates a reasonable inference that the Airport Authority Board as a whole also acted with retaliatory motive. Plaintiffs rely on DeBlasio, 53 F.3d at 601-02, and Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 593 (3d Cir. 1998). Although Defendant Shallenberger did not address those cases, those cases may be distinguishable. Plaintiffs' lack of factual allegations suggesting that Defendant Shallenberger improperly influenced any other Board member should give the Court some pause, but because the Court should dismiss Plaintiffs' claim based on a more fundamental shortfall, the Court need not delve into whether Plaintiffs' allegations are sufficient.

Plaintiffs' more fundamental problem is that Plaintiffs do not allege any involvement of Defendant Shallenberger in the rejection of the 2009 lease proposal. See Compl. at ¶¶ 247-50. As previously discussed, Plaintiffs' First Amendment retaliation claims against Defendants Airport Authority and Shallenberger are time-barred except for a claim based on the alleged rejection of Plaintiffs' 2009 lease proposal. Because Plaintiffs have not alleged any involvement of Defendant Shallenberger in the 2009 rejection of Plaintiffs' lease proposal, Plaintiffs also have not alleged any facts to support the inference that the Airport Authority Board had a retaliatory

---

[6]  Defendant Shallenberger does not raise any challenges to Plaintiffs' causation theory, except for asserting that Defendant Shallenberger did not know that Ms. Chomiak's allegations were false and that Defendant Shallenberger's single vote could not have caused Plaintiff Terry Kriss's eviction.

motive in rejecting the lease proposal.  Thus, Plaintiffs' First Amendment claims against Defendants Airport Authority and Shallenberger should be dismissed.[7]

### F.  Additional Arguments

Because all of Plaintiffs' claims should be dismissed for the reasons stated above, the Court need not address the additional arguments raised by Defendants.

## CONCLUSION

For all of the reasons stated above, it is respectfully recommended that Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to Dismiss (Doc. 24) should be granted, that Defendant Terry Shallenberger's Motion to Dismiss (Doc. 26) should be granted, and that Defendant Fayette County Airport Authority's Motion to Dismiss (Doc. 28) should be granted.  Because amendment of time-barred claims would be futile, Plaintiffs' claims should be dismissed with prejudice to the extent they are based on alleged unconstitutional conduct prior to January 18, 2009.  Because Plaintiffs' substantive due process claim is not based upon a protected property interest, amendment to the substantive due process claim also would be futile.  Thus, Plaintiffs' substantive due process claim also should be dismissed with prejudice.  Plaintiffs' other claims should be dismissed without prejudice.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by July 5, 2011.  Failure to file objections will waive the right to

---

[7]     Should Plaintiffs amend their complaint to allege involvement of Defendant Shallenberger in the 2009 rejection of Plaintiffs' lease proposal, Plaintiffs should be cautioned that they would be wise to provide factual support for the causal link or face another motion to dismiss from Defendant Shallenberger.  In addition to the lack of factual allegations that Defendant Shallenberger influenced other Board members in voting to reject the lease proposal, Plaintiffs' current theory of causation linking Plaintiffs' zoning actions to Defendant Shallenberger's motion to evict is very thin.  Any theory of causation extending the link to the later rejection of the lease proposal will be even more thin.  Further, it is unclear if Plaintiffs could recover any damages attributable to the rejection of the lease proposal.

appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).  Responses to objections

are due by July 22, 2011.

         <u>s/ Cathy Bissoon</u>     
Cathy Bissoon
U.S. Magistrate Judge

June 17, 2011

cc (via email):

All attorneys of record.